The plaintiff alleged that there was a conspiracy between the defendant and one William May, fraudulently to deprive him of his horse, and called several witnesses who testified that they were at the storehouse of the defendant when a trade for the horse in question was spoken of between the plaintiff and William May; that the contract proposed was that William May should pay $27 in specie and $175 besides for the horse; that the $27 in specie and $100 of the balance was to be paid down before the trade took place and that on the payment of $127 the plaintiff was to take the bond of William May for the sum of $75, payable six months after date, in horse flesh. These witnesses further testified that William May proposed to the plaintiff to go with him and one Howell out of the company, where they could trade to a better *Page 198 
advantage; that in a short time they heard the plaintiff exclaim that if "that is what you are for, I will have nothing more to do with you"; and that both plaintiff and William May started towards the horse in a run; that William, being younger and more active than the plaintiff, got to where the horse was tied first and took possession of him, the plaintiff at the time forbidding him to do so, and calling upon the bystanders "to (250) take notice that William May had robbed him of his horse"; that shortly afterwards William May obtained from the defendant a bridle, which he put upon the horse and rode him off. The witnesses testified further that some short time afterwards the horse was found in the possession of the defendant, who refused to deliver him up on the plaintiff's demand. Caleb Parsons, one of the witnesses examined for plaintiff, stated that he was present at the store of the defendant when the transaction above spoken of took place; that he went out to the parties where they had withdrawn themselves, and the plaintiff requested the witness to read a paper which had been prepared by William May and Howell, when William May objected and said that Howell could best read it. Witness saw a paper handed to the plaintiff and in a few minutes he heard the plaintiff say, "If that is what you are for, I will have nothing more to do with you"; the plaintiff threw down the note and the race to the horse took place as described by the other witnesses. This witness further stated that he heard some person (the particular individual he could not name) state in the hearing of the defendant the terms of the trade, which as well as witness could recollect were that William May was to give $175 for the horse, to be paid by giving his, William's, note for $75, due six months after date, and payable in horse flesh, and by paying off and discharging a note of about $40 which plaintiff owed one Kellar, and by purchasing a certain gray mare in the neighborhood. This and all the other witnesses who spoke of the alleged trade stated that when the plaintiff threw down the note and said that if that was the way he would have nothing more to do with them, William May said a note closed all former dealings between parties to the note, and that the plaintiff might pick up his note, for that was all he, William, owed him or he would pay him. This was at the instant that the plaintiff and William May started to run for the horse. It was proved also that some minutes before the plaintiff was induced to take the note of $75 in his hand, William May privately requested Howell to stand by him, and he would shortly get the plaintiff's horse. One witness stated that some months before the transaction at the defendant's store he heard William May say that he would have the plaintiff's stud horse, if he had to take him by force.
His Honor charged the jury that if they believed the testimony (251) given for the plaintiff he was entitled to the verdict. A verdict *Page 199 
was accordingly rendered for the plaintiff and the defendant's counsel moved for a new trial on the ground, first, that the plaintiff was not entitled to a verdict on the testimony of Caleb Parsons; and, secondly, because of the admission of the testimony to prove the declarations of William before the time when he took the horse from the plaintiff. The motion for a new trial was overruled and the defendant appealed.
The recovery is proper against the defendant, unless he shows a valid contract of sale from the plaintiff to William May, under whom the defendant claims. To say nothing of the suspicious circumstances of circumvention, on which the case might have been left to the jury, as authorizing the plaintiff to rescind the contract at any time before the actual delivery of the horse or the entire fulfillment of his part of the contract by William, a sufficient reason for the instruction to the jury consists in the fact that it does not appear that the parties ever came to any final agreement as to the terms of the sale. It is nearly certain that they did not. But if they had it does not appear that anything was done in execution of such agreement so as to vest the property of the horse in the supposed vendee. There was no delivery of the horse; no earnest paid, nor any acceptance by the plaintiff of the other's notes in lieu of earnest or as a security for the price.
Upon the point of evidence we see no objection except the inutility of that offered. But if it had been strictly irrelevant, a right verdict ought not to be set aside on account of its reception, unless it worked a prejudice to the party, which is not perceived in this case. Those previous declarations of William May were, however, evidence from which the jury might, in a slight degree, be aided in determining the extent and true character of the dealings between the plaintiff and the other two persons, William May and Howell. If they could have been received against the person who made them, they were also competent against the defendant, who claimed under him by a contemporaneous or subsequent contract. (252)
The judgment must, therefore, be affirmed.
PER CURIAM. Judgment affirmed.
Cited: Satterwhite v. Hicks, 44 N.C. 108; Lumber Co. v. Wilcox,105 N.C. 38; Bank v. McKethan, 84 N.C. 584; Glover v. Flowers,101 N.C. 144; Shaffer v. Gaynor, 117 N.C. 24; Croom v. Sugg,110 N.C. 261.
Overruled in part: Jenkins v. Jarrett, 70 N.C. 256. *Page 200